IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
THOMASVILLE DIVISION

| | | |
|---|---|---|
| MORRIS DWAYNE GREEN, | * | |
| Petitioner, | * | |
| | | CASE NO. 6:06-CV-17 CDL |
| VS. | * | 28 U.S.C. § 2255 |
| | | CASE NO. 6:02-cr-04 CDL |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

## REPORT AND RECOMMENDATION

Petitioner Green was indicted in this court on March 7, 2002, and charged with car-jacking with intent to cause death or serious bodily harm by use of force and violence in violation of 18 U.S.C. § 2119(2) and 18 U.S.C. § 2 in Count I of the Indictment. He was charged in Count II of the indictment with knowingly using, carrying, possessing, and discharging a firearm during and in relation to a crime of violence, to wit: car-jacking, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (R-1).

On June 7, 2002, Petitioner Green entered into a Plea Agreement (R-15) with the Government and pled guilty to Count II of the Indictment. Section (8) of Petitioner's Plea Agreement contained a stipulation of the facts of the offense as follows:

> [T]he United States Attorney and the defendant stipulate and agree that should this case go to trial before a jury, the following facts would be proven by the Government beyond a reasonable doubt: On July 19, 1999, Earnest Glynn , Morris Green and B.Y. (a juvenile) drove a stolen Buick LeSabre from Florida to Bainbridge, Georgia. They stopped at the Quick Buy Convenience Store in order to rob it. Upon changing their minds, they noticed that the vehicle in which they traveled was

      stuck in a ditch. At this point they abandoned the vehicle and began to look for another one. During this time, Macon Moore, was located at the Harrell King Heating and Cooling, on Faceville Highway, Bainbridge, Georgia. He was in the process of unloading some items from his company vehicle and placing them into his personal vehicle, which was a Ford Ranger Pickup Truck, VIN #1FTCR10X9PUC08774. The three defendants approached Moore wearing ski masks and gloves. All three carried a shotgun. One of the adult defendants demanded Moore to back away from his truck. As Macon Moore turned toward the vehicle, Glynn fired a shotgun and struck Macon Moore in the left arm. After the first shot, Macon Moore reached toward the truck and a second shotgun blast was fired. This shot struck Moore in his leg. After shooting Moore, Glynn, Green and B.Y. got into Moore's truck and drove back to Florida. The truck was found abandoned in Gadsden, Florida. . . . [After being apprehended] B.Y. and Glynn both identified Green as the third gunman during this incident. Furthermore, Green acknowledges that he was the third gunman during this incident.

In Section (2) of the Plea Agreement, Petitioner Green recited that he understood his rights relative to a jury trial and rights incident thereto, that he had discussed those rights with his attorney, was satisfied with the services of his attorney, and knowingly and voluntarily waived his right to plead not guilty and proceed to trial.

In Section (3) of the Plea Agreement, Petitioner Green stated that he was guilty of the offense and would knowingly and voluntarily enter a plea of guilty to Count Two of the Indictment, charging him with Possession, Carrying, Using and Discharging a Firearm During and In Relation to A Crime of Violence, to wit: Carjacking, in which the victim received serious bodily injury, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

In ¶ (B) of Section (3) of the Plea Agreement, Petitioner Green stated that he fully understood that his plea of guilty to Count II of the Indictment would "subject defendant to

imprisonment of a mandatory minimum twenty-five years up to life imprisonment," and that, "The United States and the Defendant agree that the Defendant be permitted to enter his plea pursuant to Rule 11 (e)(1)(C) of the Federal Rules of Criminal Procedure and that the Court impose a sentence of twenty-five (25) years to serve in imprisonment. Furthermore, this sentence shall run consecutive to the sentence the Defendant is currently serving out of the Northern District of Florida . . . ."

In ¶ (H) of Section (3) of the Plea Agreement, Petitioner waived "any right to a direct appeal or other review of defendant's sentence by the District Court or Court of Appeals after conviction except in the case of an upward departure from the guidelines pursuant to 5K2.0 and 4A1.3 and any claim of ineffective assistance of counsel."

Petitioner Green signed the Plea Agreement stating that he had read the agreement, that he had had it read to him by his attorney, that he had discussed the agreement with his attorney, and that he fully understood it and agreed to its terms. Petitioner Green and his attorney also initialed each page of the Plea Agreement.

After a Pre-Sentence Investigation (PSI) was made and reported to the district court, Petitioner Green was sentenced to serve the agreed upon twenty-five (25) year sentence of imprisonment. (R-20).

## Collateral Proceedings

On March 13, 2006, Petitioner Green filed the present Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C. § 2255 in this court. (R-23). He states on page 3 in the Statement of Facts section of his Motion that:

>Briefly, the record shows the defendant entered a plea of guilty to Count Two, Indictment No. 6:02-CR-4-1-CDL. The plea of guilty was based upon a written plea agreement and the advice of counsel. The Court imposed a 25-year sentence, July 3, 2002. No direct appeal has been taken. Further, no collateral proceedings have been filed.

## Statute of Limitations

It appears that Petitioner Green has allowed the statute of limitations to elapse on his Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255. As he notes he did not file a direct appeal. Therefore, his sentence became final on August 3, 2002, more than three and one-half years before he filed the present § 2255 Motion.[1] The Anti-Terrorism and Effective Death Penalty Act (AEDPA) codified as part of 28 U.S.C. § 2255,effective on April 24, 1996, in relevant part provides as follows:

>A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of -
>    (1) the date on which judgment of conviction becomes final;
>    (2) the date on which impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if movant was prevented from making a motion by such governmental action;
>    (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>    (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

---

[1] *See Adkins v. United States,* 204 F.3d 1086, 1089(11th Cir. 2000) (When no direct appeal is made, the judgment of conviction becomes final once "the opportunity for direct appeal of the judgment is exhausted.").

To circumvent the AEDPA statute of limitations, Petitioner Green alleges in his Statement of Facts that:

> Defendant, immediately after sentence, confronted counsel about the harsh sentence, and an appeal of the sentence. Counsel alleged that the defendant had no grounds to appeal. Nonetheless, defendant asked counsel to appeal the sentence based upon the fact that counsel had informed the defendant that the court would not impose a 25-year sentence due to an agreement to cooperate in the criminal prosecution of another, and a 3-point reduction of the offense guideline. Counsel failed to appeal.

Petitioner cites Supreme Court and Eleventh Circuit authority that, if a defendant specifically requests of his counsel that he file an appeal of his sentence and counsel fails to do so, the defendant is entitled to an out-of-time appeal. *See Gomez-Diaz v. United States,* 433 F.3d 788 (11th Cir. 2005) (where a defendant asserts in his motion for post conviction relief that he was denied effective assistance of counsel when his attorney failed to comply with his request to file a notice of appeal in his criminal case, he is entitled to an evidentiary hearing to establish the content of communications between himself and his attorney, and if the evidence adduced establishes that the attorney acted contrary to the defendant's wishes, prejudice will be presumed and the defendant will be entitled to an out-of-time appeal, whether or not the defendant identifies any arguably meritorious grounds for appeal outside the limits of the waiver of appeal contained in his Plea Agreement). *Id.* at 793, 794. Because Petitioner Green made the appropriate allegations, he was granted an evidentiary hearing to expand the record to include communications between himself and his counsel regarding his request to file an appeal in his case. The hearing was held on June 7, 2006, and

transcribed for the record here.   See R-34.

Petitioner's testimony in regard to his request that his counsel file an appeal is as follows:

> Q. Following sentencing in your case, did you ask for an appeal?
>
> A. Yes. . . .  Before this incident and after this incident.  . . .  I had a co-defendant, Earnest Glynn, who was sentenced before me.  And after hearing that the three point acceptance of responsibility was not given, I asked him [his attorney, Mr. Perry] to make sure he appealed that sentence [his upcoming sentence].  . . .  Afterwards, I seen him after I was initially taken back to the holding tank.  And I asked him then.  And he stated that there was nothing to appeal. . . .  I asked him to appeal the sentence.  . . .  I'm not exactly sure of all of what else was said at that time, but I did ask him to appeal that sentence.  . . .  He stated that there was nothing to appeal. . . .  I asked him for once why was the three point acceptance of responsibility was not given, and he said there was a statutory sentence, for which he never elaborated on.

(R-34 at 6,7,8).   Petitioner Green then identified a letter he had written to his counsel "maybe four, three to four months later" [after sentencing], which he labeled as Defendant's Exhibit Number 1.  (R-34 at 9).   The letter was dated October 31, 2002, and captioned, "Subj: Appeal and Substantial Assistance."  However, nowhere in the body of the letter does Petitioner Green mention anything about an appeal of his sentence.  He posed three questions to his former attorney, to wit:

> QUESTION: Why did the Court terminate the motions for discovery and Brady Material?
>
> QUESTION: Where is the authority of the Court to sentence a defendant to a life sentence pursuant to iii?
>
> QUESTION: Did Special Agent (ATF) Bill Crumette brief you on the cooperation I rendered?

Petitioner Green's letter does not equate evidence that he had requested that his attorney filed an appeal of his sentence. Neither does the attorney's response make reference to any request for an appeal of Petitioner's sentence, which response was entered into the evidence as Defendant's Exhibit #2. To the contrary, the attorney's letter in response contained the following:

> I reviewed each and every page of the discovery materials with you and discussed at length with you the probability of the government's success in convicting you under the indictment. I then, at your request, engaged the government in negotiating a proposed plea agreement and presented that to you. The agreement was for a sentence of twenty-five years and you accepted it without hesitation and on your oath stated that you did so freely and voluntarily.

Defendant's Exhibit #2 fails to shed light on any request by Petitioner Green that his sentence be appealed, and, furthermore, the letters were exchanged long after the time period within which a Notice of Appeal could have been filed.

Petitioner Green testified on cross-examination that he had agreed to enter a guilty plea in which he would receive a sentence of twenty-five years consecutive to the sentence he was currently serving in Florida and that he recalled that the District Judge at his change of plea hearing on June 7, 2002, had asked him several times if he understood that under his Plea Agreement he would be receiving a sentence of twenty-five years to serve consecutive with his Florida sentence. (R-34 at 15). Additionally, on cross-examination, Petitioner Green asserted that he wanted to appeal his case because he felt that he was entitled to a reduction in his sentence for acceptance of responsibility. However, he acknowledged that

the Plea Agreement did not indicate that he would automatically receive a reduction, but that the matter was entirely within the Court's discretion whether or not the defendant would be entitled to any reduction based upon any acceptance of responsibility. (R-34 at 17).

Petitioner Green evidenced considerable confusion about his sentence at the evidentiary hearing on June 7, 2006 , when he stated that he had discussed with his attorney, after sentencing, that it was his "understanding of the plea agreement that the Sentencing Guidelines would be applicable. But they were not. And the three point acceptance of responsibility was not there." (R-34 at 18). Petitioner Green indicated also that he told his attorney another issue that he wanted to appeal was that the statute, 18 U.S.C. § 924(c)(1)(A)(iii), "is a statute for ten years, not less than ten years. Not twenty-five mandatory." When he was asked if this was a conversation he was having with his attorney after sentencing, Green responded, "Well, not in full length. Not in full length. Because he, maybe Court or whatever, was distraught, but he didn't, he didn't really – – ." (Id.).

When Attorney Perry was called to be questioned, he was asked whether, after the defendant was sentenced, Perry had an occasion to speak with him about an appeal. Attorney Perry answered:

> I spoke with him briefly. I didn't speak with him about an appeal. . . . I spoke with him immediately after sentencing in the holding area back here. He said he wanted, he gave me an idication he wanted to speak with me. So I spoke with him back there. He had a couple of questions regarding the sentence. Wanted to make certain that it was as we expected and that I understood it to be the same sentence that we were anticipating from the plea agreement. And that was essentially it.

(R-34 at 23, 24). The Attorney was asked what sentence was he expecting, and he answered:

8

> Twenty-five years consecutive to the time he was presently serving. . . . It was (a negotiated plea).

(Id. at 24). Perry was asked if the defendant received a sentence different from what he had reviewed with him and what the Court had reviewed with him at the change of plea hearing, and he answered, "No. It was right down the line of what we anticipated and we had agreed to." (Id. at 26). Attorney Perry was asked, "Did the Defendant ever ask about a reduction for acceptance of responsibility?", to which he answered, "No." (Id. at 27).

On cross-examination, Perry was asked, "Do you recall having a conversation with Mr. Green about a co-defendant's sentence and him asking you to appeal even before he was sentenced?" Attorney Perry answered, "No. Never happened." (Id. at 32).

Petitioner Green's counsel also asked Attorney Perry:

Q. So even if there is an agreement between the U.S. Attorney and Mr. Green, the judge still could have done anything he wanted; he didn't have to sentence him to twenty-five years. Correct?

A. No. In fact, Judge Land gave some major concerns at the beginning that he didn't, that he thought a greater sentence should be imposed, and was hesitant to accept the twenty-five years. That's the reason the Defendant was so happy that he did accept it.

(Id. at 33).

Attorney Perry's testimony appeared to be forthright and without personal interest in the outcome of the proceedings. His demeanor indicated truthfulness in his attempt to recall what had actually happened in regard to whether Petitioner Green had requested that he appeal his sentence. Perry was adamant that that had not happened. On the contrary, Petitioner Green did not exhibit a demeanor of truthfulness during his testimony regarding

9

a request for an appeal of his sentence. His testimony was vague as to how he had requested that his attorney appeal his sentence, and vague as to Attorney Perry's response. Moreover, his testimony was in conflict with his testimony to Judge Land at the time of his change of plea hearing. After the Indictment and particularly Count Two to which Petitioner Green had indicated in his Plea agreement that he would be entering a plea of guilty had been read, and after the Assistant U.S. Attorney had stated that the offense "carries a minimum mandatory imprisonment of 25 years, a maximum term of imprisonment of life," Judge Land asked Petitioner Green, "Do you understand the ranges of the possible sentence for this offense?" Petitioner Green answered, "Yes." (R-29 at 5-8). The following colloquy occurred between the Court and Petitioner Green:

> THE COURT:   Do you understand in the plea agreement that you are agreeing in that agreement to a sentence of 25 years in prison, if the Court were to accept the plea agreement? Do you understand that?
>
> THE DEFENDANT:   Yes.
>
> THE COURT:     Do you understand that if the Court were to accept the plea agreement, that that 25-year sentence for this offense will run consecutive to the prison time you are currently serving for your other Federal offense? Do you understand that?
>
> THE DEFENDANT:   Yes.
>
> THE COURT: Do you understand that that means this 25 years for this sentence, if the Court were to accept the plea agreement, that that means that you will serve that 25 years in addition to any prison time you are currently serving for your current offense? Do you understand that?
>
> THE DEFENDANT:   Yes.  . . .

THE COURT:   All right.  Mr. Green, this is your plea agreement; is that correct?

THE DEFENDANT:   That is correct.

THE COURT:   And you have signed the plea agreement; is that correct?

THE DEFENDANT:   Yes.

THE COURT:   You have agreed to it?

THE DEFENDANT:   Yes.

THE COURT:   You have initialed every page of it?

THE DEFENDANT:   Yes.

THE COURT.   You have read every word of it?

THE DEFENDANT:   Yes.

THE COURT:   You understand it completely.

THE DEFENDANT:   Yes.

THE COURT:   Have you discussed it with your attorney?

THE DEFENDANT:   Yes.

THE COURT:   Do you have any questions about the agreement?

THE DEFENDANT:   No.

THE COURT:   Do you understand that in the plea agreement, you have given up the right to appeal certain aspects of your sentence in the plea agreement? Do you understand that?

THE DEFENDANT:   Yes.

THE COURT:   You have given up your right to appeal your sentence, except as it may relate to an ineffective assistance of counsel claim or upward departure from the sentencing guidelines?   Do you understand that?

THE DEFENDANT:   Yes.

THE COURT:   Otherwise, you have given up or waived your right to any appeal with regard to any sentence in this case.

THE DEFENDANT:   Yes.

THE COURT:   . . . I want to make sure I covered this: Do you have any questions about the plea agreement?

THE DEFENDANT:   No, Your Honor, I don't.

THE COURT:   Do you understand that parole has been abolished and that if you are sentenced to prison, you will not be released on parole?  Do you understand that?

THE DEFENDANT:   Yes.

THE COURT:   Have you discussed with your attorney the fact that in this plea agreement, you are giving up the right to appeal your sentence except for the two items I mentioned previously?

THE DEFENDANT: Yes.

THE COURT:   And you fully understand the consequences of giving up that right to appeal?

THE DEFENDANT:   Yes.

THE COURT:   Has the Assistant United States Attorney or any agent of the Government or anyone associated with the Government promised anything to you that is not written down in the plea agreement?

THE DEFENDANT:   No.

Petitioner Green's assertion and testimony at the evidentiary hearing that he timely requested that his attorney file an appeal of his sentence must be considered in light of his understanding of his Plea Agreement, his limited waiver of appeal, and his understanding of

the consequences of his guilty plea. The issue before the court comes down to the credibility of Petitioner Green as opposed to the credibility of his counsel, Attorney Perry. The evidence and the record establish that at the time of sentencing in this case, Petitioner Green had already been convicted and was serving a sentence of imprisonment in Case No. 4:01-CR-21 in the United States District Court for that Northern District of Florida for the same offense charged here, namely, Using and Discharging a Firearm During the Commission of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (PSI ¶ 46). Because of this second or subsequent conviction of the same offense, in this court, in addition to the provisions of 18 U.S.C. § 924(c)(1)(A)(iii), the provisions of § 924(c)(1)(C)(i) and (D) were invoked to require a minimum mandatory consecutive sentence of not less than twenty-five (25) years imprisonment to a maximum of life imprisonment.

Attorney Perry's conduct in negotiating a plea agreement to hold the possible sentence to twenty-five years under the circumstances was both reasonable and professional. Furthermore, Attorney Perry appeared to be completely credible at hearing, particularly on the issue of whether Petitioner Green had requested an appeal of his sentence at any time whatsoever. The terms of the plea agreement and Petitioner's particular circumstances support all of Mr. Perry's testimony.

On the other hand, Petitioner Green's testimonial demeanor, his vague and illogical understanding, after the fact, of the possible sentence he might have received, made him less than a credible witness in his own behalf. Green's claim that he timely requested that his counsel appeal his sentence is not supported by any credible evidence. Petitioner Green is,

therefore, not entitled to an out-of-time appeal. His Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 is barred by the AEDPA statute of limitations by more than three and one-half years.

WHEREFORE, IT IS RECOMMENDED that Petitioner Green's Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may file and serve written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

SO RECOMMENDED this 15th day of August 2006.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE